**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anne S. Murphy, ) | No. CV-10-01391-PHX-ROS |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Wells Fargo Bank, NA, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Counterclaimant Sandburg Financial Corporation ("Sandburg") has moved to strike the answer filed by Gerald and Anne Murphy. For the following reasons, the motion will be granted.

**BACKGROUND**

The procedural history of this case is incredibly complicated as it involves multiple lawsuits filed in multiple jurisdictions. In short, in the summer of 2010 Anne Murphy sued Wells Fargo Bank, N.A. ("Wells Fargo") in Arizona for allegedly misappropriating certain funds from her Wells Fargo account. (Doc. 1). Anne Murphy later added Sandburg as a defendant. (Doc. 13). Around that same time, Sandburg was suing Gerald Murphy and Anne Murphy in Texas to enforce a judgment obtained in California. There were two cases in Texas, both of which were eventually transferred to this Court. (CV-11-208-PHX-ROS, CV-11-1497-PHX-ROS).

Sandburg and Gerald Murphy (acting on behalf of his marital estate) entered into a

1 settlement agreement resolving the two cases from Texas. Those cases were dismissed.
2 Unfortunately, Gerald and Anne Murphy breached the settlement agreement which led
3 Sandburg to file counterclaims against Gerald and Anne Murphy in the case originally
4 brought by Anne Murphy. Those counterclaims were for breach of contract and fraud. Anne
5 Murphy's claims against Wells Fargo and Sandburg were dismissed based on her failure to
6 comply with Court orders. (Doc. 263). That dismissal left pending only the counterclaims
7 brought by Sandburg against Gerald and Anne Murphy.

8 On May 1, 2013, the Court held a status conference. During that conference, counsel
9 for Sandburg explained that he was having difficulty obtaining documents from Gerald
10 Murphy. Sandburg was seeking documents regarding Mr. Murphy's ability to pay the
11 settlement amount. During his deposition, Mr. Murphy claimed he was attempting to obtain
12 the funds to pay what he owed but that a number of individuals were thwarting his efforts.
13 Those individuals included Kofi Annan (the former Secretary General of the United Nations),
14 the current CEO of Bank of America, and Jim Yong Kim (President of the World Bank).
15 Sandburg's counsel had propounded discovery to Gerald Murphy regarding his interactions
16 with these individuals. In particular, Sandburg sought:

> all records of communication between Mr. Murphy and Bank of America, any statements of accounts at Bank of America, any correspondence that would have to do with the failure to release funds, any confirmations of wire deposits from Ghana, any e-mails between Bank of America representatives and Mr. Murphy, any emails between [Kofi Annan] and Mr. Murphy, any e-mails or any kinds of other communications between [the President] of the World Bank and Mr. Murphy, his cell phone billing statements from the periods of 2010 to the present, any and all communications whatsoever with the failure to release funds.

(Doc. 271 at 22). The Court advised Mr. Murphy that, based on Mr. Murphy's previous statements, this information was relevant and he was required to produce the responsive documents. (Doc. 271 at 23). The Court warned Mr. Murphy that the failure to provide responsive documents might result in sanctions. (*Id.*)

Mr. Murphy responded that he talked "every day" to Kofi Annan, the CEO of Bank of America, and Mr. Kim. (Doc. 271 at 23). Mr. Murphy indicated he could provide his

- 2 -

communications with these individuals "any way [Sandburg wants]." (Doc. 271 at 23). Mr. Murphy agreed to produce the communications by May 17.

On May 21, 2013, Sandburg filed a motion to strike the answer to its counterclaims. (Doc. 270). According to that motion, Mr. Murphy did not produce any documents by May 17. The motion also pointed out that Mr. Murphy had attempted to engage in fraudulent behavior. As shown in an email attached to the motion, Mr. Murphy advised Sandburg that Mr. Murphy would send Sandburg the $250,000 (identified as $300,000 in the email) he owed under the parties' settlement agreement if Sandburg sent him $3,000 dollars. (Doc. 270-1 at 13). The email explains that the "$3,000 would be given to Kofi Annan as an escrow holder to be released upon [payment of] the $300,000 to you." (Doc. 270-1 at 13). In other words, Kofi Annan was going to act as an escrow agent to help the CEO of Bank of America transfer money to Mr. Murphy. There is no evidence Mr. Murphy has ever had any contact with any of these famous individuals. Moreover, the claim that Kofi Annan runs a side business as an escrow agent is hard to believe. Mr. Murphy's claims about Kofi Annan and the like appear to be utterly fantastical and the request for an additional $3,000 appears to be a transparent confidence scheme.

Mr. Murphy's response to the motion to strike attempts to explain his behavior but offers no coherent explanation. Mr. Murphy appears to concede that he owes funds to Sandburg but he argues unexpected delays have prevented him from paying those funds. He explains that his request for an additional $3,000 was "to obtain the necessary regulatory approvals" and that it is "slanderous" to accuse him of attempting to defraud Sandburg. (Doc. 273 at 4-5). Mr. Murphy claims the "unsettled financial conditions internationally" are preventing him from making payment. (Doc. 273 at 5). Mr. Murphy provides no explanation for his failure to comply with his discovery obligations.

## ANALYSIS

It is now clear that Mr. Murphy is not acting in good faith. Mr. Murphy has made misleading and inaccurate statements in filings and in-person before this Court. He has also attempted to obtain additional funds from Sandburg in a transparent attempt to defraud

- 3 -

1 Sandburg. Most importantly, however, Mr. Murphy refused to comply with his discovery
2 obligations and the order requiring him to produce responsive documents. Pursuant to
3 Federal Rule of Civil Procedure 37(b), such refusal to participate in discovery allows the
4 Court to impose sanctions. The only issue is the appropriate extent of those sanctions.

5 In determining whether it would be appropriate to strike the answer as a result of Mr.
6 Murphy's misconduct, the Court must consider the following five factors: "(1) the public's
7 interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3)
8 the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases
9 on their merits; and (5) the availability of less drastic sanctions." *Hester v. Vision Airlines,*
10 *Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012). Given the history of this case, these factors weigh
11 heavily in favor of striking the answer.

12 The public's interest in expeditious resolution of litigation and the Court's need to
13 manage its docket weigh in favor of striking the answer. This case has been pending for over
14 three years and has required an inordinate expenditure of judicial resources.[1] Mr. Murphy
15 routinely files inappropriate documents and the Court has had to devote substantial resources
16 to keeping this litigation moving forward. Allowing this case to continue also risks
17 substantial prejudice to Sandburg. Sandburg is being required to continue to incur attorneys'
18 fees due to Mr. Murphy's inappropriate behavior. And, on a related note, the public policy
19 favoring disposition of cases on their merits does not weigh in favor of allowing this case to
20 proceed because it is impossible to reach the merits given Mr. Murphy's behavior. When,
21 as here, a party refuses to participate in discovery, there is no clear path for getting to the
22 merits of the case.[2] Overall, four of the five factors weigh in favor of striking the answer.

---

[1] Sandburg's counterclaim has not been pending for the entire history of this case. The counterclaim, however, stems directly from issues that *have* been pending since this case, and the two related cases, were first transferred to this Court. Thus, the Court considers the entire time this case has been pending as the relevant time period.

[2] Mr. Murphy has conceded liability on the breach of contract counterclaim. (Doc. 276 at 3, "Mr. Murphy solely has agreed to make the $250,000 Settlement Payment as soon

- 4 -

The only factor that might ordinarily weigh against striking the answer is the possibility of less drastic sanctions. The Court has not yet sanctioned Mr. Murphy but unfortunately, there do not appear to be any plausible lesser sanctions to impose. In a previous order, the Court noted that Anne Murphy did not have "the financial resources to satisfy a monetary fine." (Doc. 263 at 3). A later filed document indicated the Murphys "agreed" with this finding. Thus, a monetary fine would be futile. In addition, given the attempt by Mr. Murphy to defraud Sandburg of additional funds, the Court "anticipates continued deceptive misconduct" should this case continue. *Hester v. Vision Airlines*, 687 F.3d 1162, 1170 (9th Cir. 2012) (citation omitted). No lesser sanction than striking the answer is appropriate.

Mr. Murphy failed to produce responsive documents immediately after representing in open court that he would do so. Mr. Murphy has attempted to explain his behavior by making incredible claims that he needs to coordinate his actions with the former Secretary General of the United Nations, the CEO of Bank of America, and an official from the World Bank. And Mr. Murphy has attempted to defraud Sandburg of additional funds. Mr. Murphy has abused Sandburg and the Court system long enough. The motion to strike will be granted and Sandburg will be directed to brief the appropriate amount of a default judgment.

Accordingly,

**IT IS ORDERED** the Motion to Strike (**Doc. 270**) is **GRANTED**. The Clerk of Court shall strike the Answer (Doc. 222).

**IT IS FURTHER ORDERED** no later than August 9, 2013 Sandburg Financial Corporation shall file a Motion for Default Judgment. That motion shall include supporting evidence detailing the precise amount of damages Sandburg seeks. The motion shall also discuss whether a trial is needed to determine the amount of damages or whether a trial can be avoided.

---

as he is able."). Thus, the striking of the answer would only prevent possible litigation of the fraud claim. But again, absent discovery it would be impossible to resolve that claim on its merits.

- 5 -

1      **IT IS FURTHER ORDERED** the Motion to Grant Permission (**Doc. 267**), Motion
2   for Retrial (**Doc. 275**), and Motion to Strike (**Doc. 277**) are **DENIED**.
3      DATED this 29th day of July, 2013.

_____
Roslyn O. Silver
Chief United States District Judge